No. 48,412

STATE OF KANSAS, *Appellant*, v. GARTH E. MORGAN, FARRELL D.
HAUSER, SHELDON W. CORDRY, LESLIE M. MORGAN and O'LINDA
D. SOLORIO, *Appellees.*

(563 P.2d 1056)

Opinion filed April 9, 1977.

*Stephen M. Joseph*, assistant district attorney, argued the cause, and *Curt T.
Schneider*, attorney general, *Vern Miller*, district attorney, and *Robert L. Kennedy,
Jr.*, assistant district attorney, were on the brief for the appellant.

*Jack Focht*, of Smith, Shay, Farmer & Wetta, of Wichita, and *William D.
Rustin*, of Wallace, Rustin, Just, Dewey & Thomas, of Wichita, argued the cause
and were on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: This is an interlocutory appeal by the state from an
order suppressing evidence obtained under a search warrant.

The search warrant was issued as the result of almost a month
of investigative work by the Wichita Police Department narcotics
section. Detective John Hayworth made contact with a young
couple who offered to obtain drugs for him, unaware that he was
a police officer. After Hayworth made several purchases from the
couple he attempted to determine the source of their supply. His
investigation led him to believe their drugs came from a duplex at
1162 North Richmond in Wichita.

On January 12, 1976, Hayworth made application for a search
warrant for the duplex. The application stated the affiant believed
an unknown quantity of cocaine and United States currency,
listed by serial numbers, were located at 1162 North Richmond.
In addition, the application revealed the following relating to
probable cause:

"The affiant is a detective in the Wichita Police Department, assigned to the
Narcotics Section.

"The affiant has purchased various drugs from one Gary Hollingsworth on
four separate occasions within the last two weeks. On 1-3-76, Gary Hollingsworth,
who had previously agreed to sell affiant some cocaine, met the affiant at the

Indian Hills Shopping Center to consummate the purchase. This meeting occurred during the evening hours. Gary Hollingsworth, after taking the affiant's purchase money, told affiant that he was then going to get the cocaine at 'his man's' house. Hollingsworth then left. From that point Hollingsworth was surveilled by other police officers and the police helicopter. Hollingsworth was observed driving to North Richmond and was observed entering the north half of a duplex on the eleven hundred block of Richmond. I later determined that the address of this duplex unit is 1162 North Richmond. Hollingsworth was then observed leaving the duplex and returning to the Indian Hills Shopping Center. Hollingsworth was not observed stopping at any other locations. When Hollingsworth returned to the Center, he delivered one gram of cocaine to the affiant.

"The affiant later determined, through an independent source, that one Garth Morgan resides at 1162 North Richmond. On one of the three other occasions that affiant has purchased drugs from Gary Hollingsworth the affiant asked Hollingsworth how much an ounce would cost. Hollingsworth went to a phone and made a phone call. When the other party answered, Hollingsworth asked if 'Garth's' there. The other party evidently said no, because Hollingsworth then asked if 'Ferrell' was there. The affiant also is aware that one Ferrell D. Houser was arrested on 12-23-75 and gave his address as 1162 North Richmond, for possession of marijuana and paraphernalia.

"On January 12, 1976, the affiant talked with Gary Hollingsworth's wife on the telephone for the purposes of purchasing more drugs. When the affiant asked her about the cocaine, she asked another person in the room with her, 'have you talked to Garth today?' Both Hollingsworths have told the affiant that they are expecting a quantity of cocaine to be delivered today. In another phone conversation on the same day, Gary Hollingsworth told the affiant that he had talked to 'Garth' and that Garth said he could have four ounces Wednesday afternoon, 1-14-76.

"As a result of the telephone conversation with Mrs. Hollingsworth, the affiant arranged to purchase a quantity of cocaine from the Hollingsworths. The affiant intends to use the currency listed elsewhere in this application and in the search warrant to make this purchase. The affiant believes that this currency, the serial numbers of which are listed on the search warrant, will be taken to 1162 North Richmond by one of the Hollingsworths.

"The affiant believes that probable cause exists to believe that cocaine will be found at 1162 North Richmond and that the listed currency will also be found at that address.

"WHEREFORE he prays that a search warrant be issued, according to law, to search for, apprehend and seize, the above described items, if any there be, holding them to be dealt with according to law."

As a result of the application, a search warrant for the north half of the duplex known as 1162 North Richmond was issued by Judge Owen Ballinger of the Sedgwick County Court of Common Pleas.

On January 14, 1976, Hayworth contacted Gary Hollingsworth and arrangements were made to meet the next day to purchase the cocaine described in the search warrant and affidavit. The next

evening the two men met and negotiated the sale of one-half ounce of cocaine for $750. Hayworth gave Hollingsworth the money and Hollingsworth left to pick up the cocaine. The police followed him to 1162 North Richmond. Hollingsworth returned to deliver the cocaine to Hayworth and was arrested. Other officers converged on the duplex and executed the warrant; whereupon, they recovered a large quantity of cocaine, other drugs and the marked money.

An information was filed against the five defendants in this action charging them with possession and sale of cocaine, possession of cocaine with the intent to sell, possession of amphetamines, possession of marijuana, possession of marijuana with the intent to sell and conspiracy to sell cocaine. The defendants filed a motion to suppress the evidence obtained as a result of the search at 1162 North Richmond. After a hearing on the motion, the trial court suppressed the evidence.

It is an elementary rule of law that a search warrant may not issue except on a showing of probable cause. The warrant must particularly describe the person, place or means of conveyance to be searched and the things to be seized. (K. S. A. 1976 Supp. 22-2502; *State v. Gordon,* 221 Kan. 253, 559 P. 2d 312.) Sufficient facts must be placed before the issuing magistrate to enable him to make an intelligent and independent determination that probable cause exists. Bald conclusions, mere affirmations of belief, or suspicions are not enough and, while an affidavit may be based on hearsay, there must be sufficient affirmative allegations of fact as to affiant's personal knowledge to provide a rational basis upon which a magistrate can make a judicious determination of probable cause. (*Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; *Giordenello v. United States,* 357 U. S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245; *Nathanson v. United States,* 290 U. S. 41, 78 L. Ed. 159, 54 S. Ct. 11; *State v. Hart,* 200 Kan. 153, 162, 434 P. 2d 999.)

"Probable cause" to issue a search warrant is like a jigsaw puzzle. Bits and pieces of information are fitted together until a picture is formed which leads a reasonably prudent person to believe a crime has been or is being committed and that evidence of the crime may be found on a particular person or in a place or means of conveyance. (K. S. A. 1976 Supp. 22-2502.) In *State v. Lamb,* 209 Kan. 453, 497 P. 2d 275, this court explained:

"Probable cause to arrest refers to that quantum of evidence which would lead a prudent man to believe that the offense has been committed. (*Henry v. United States*, 361 U. S. 98, 102, 4 L. Ed. 2d 134, 80 S. Ct. 168 [1959].) It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the information led a reasonable officer to believe that guilt is more than a possibility, and it is well established that the belief may be predicated in part upon hearsay information. (*Draper v. United States*, 358 U. S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 [1959].) The quantum of information which constitutes probable cause to arrest must be measured by the facts of the particular case. (*Wong Sun v. United States*, 371 U. S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 [1963].)

"Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. (*Carroll v. United States*, 267 U. S. 132, 162, 69 L. Ed. 543, 45 S. Ct. 280 [1925].)

"Evidence sufficient to support probable cause for an arrest on the part of an arresting officer is also sufficient to support a finding of probable cause by a magistrate in the issuance of a search warrant." (p. 467.)

The burden is on the prosecution to show a search and seizure was lawful and supported by probable cause (K. S. A. 22-3216 [2]; *State v. Youngblood*, 220 Kan. 782, 785, 556 P. 2d 195); but once a search warrant has been issued, supported by an affidavit which recites facts sufficient to find probable cause, prima facie evidence of a lawful search and seizure is established. (79 C. J. S., Searches and Seizures, Sec. 98, pp. 917-18. See also, *State v. Yates*, 202 Kan. 406, 449 P. 2d 575; *State v. Emory*, 193 Kan. 52, 391 P. 2d 1013, cert. denied, 379 U. S. 906, 13 L. Ed. 2d 179, 85 S. Ct. 200.)

The question in this case is whether the search warrant application shows on its face probable cause to believe a crime had been or was being committed on January 14, 1976, and that evidence, fruits or instrumentalities of that crime were at 1162 North Richmond. We hold there was probable cause.

The affidavit contained information that four previous drug sales had been made to affiant. On one occasion a sale was made whereby affiant gave money to the seller and the seller made a nonstop trip to 1162 North Richmond, returning with cocaine. It was later determined the seller was dealing with persons named "Garth" and "Farrell." Affiant knew a person named Farrell D. Hauser lived at 1162 North Richmond and had a recent connection with drugs.

Evidence of a single isolated drug sale may not give probable cause to believe drugs are present at a particular location; however, where an affidavit gives evidence of activity indicating protracted or continuous conduct at a particular location and that evidence provides a reasonable basis to infer drugs are still present, probable cause may exist. (*United States v. Jones*, 500 F. 2d 1085 [4th Cir. 1974]; *United States v. Thompson*, 495 F. 2d 165 [D.C. Cir. 1974]; *Commonwealth v. Vynorius*, ____, Mass. ____, 336 N. E. 2d 898 [1975]; 100 A. L. R. 2d Anno., Search Warrant—Affidavit—Sufficiency, Sec. 7, pp. 542-43.) A police officer may also add to other evidence the fact the location to be searched is occupied or frequented by known narcotics users or sellers. (*United States v. Harris*, 403 U. S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075; *Jones v. United States*, 362 U. S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725; *United States v. Watts*, 540 F. 2d 1093 [D.C. Cir. 1976]; *People v. Hanlon*, 36 N. Y. 2d 549, 369 N. Y. S. 2d 677, 330 N. E. 2d 631 [1975].)

In *United States v. Hodge*, 539 F. 2d 898 (6th Cir. 1976), federal drug officers participated in arrangements for a large heroin sale to be made to an informant. During two telephone conversations, defendant Hodge discussed details of the sale with the informant, unaware the conversations were overheard by federal officers. The sale was to take place in Detroit at a certain time and place. When the defendant and the informant met, arrangements were made for defendant to get a sample of the drug. As in our case, officers followed the defendant to a certain address and, without stopping elsewhere, he returned to the informant with the heroin. The next morning the informant and defendant met and the sale was completed. Agents arrested defendant Hodge. A search warrant was obtained for the residence where the defendant picked up the heroin sample. The search uncovered a quantity of money, plastic bags having traces of heroin, and other items. The district court denied the defendant's motion to suppress. On appeal, the Circuit Court of Appeals upheld the validity of the search warrant, stating probable cause existed to believe a quantity of heroin would be found at the residence because of defendant's actions in obtaining the drug, his return with it, the fact he was under surveillance, and his statement that he could sell additional quantities of the drug.

The district court held the search warrant in the present case

was invalid because its probable cause was based on future crimes or events and past drug sales which were "stale." Probable cause to search must be based on crimes which have been or are being committed at the time the warrant is issued (K. S. A. 1976 Supp. 22-2502), and not on a belief that a crime may be committed in the future. Although we recognize this distinction in the statute, it is immaterial to this case. Based on the continuous course of past transactions which related to the duplex and its occupants, probable cause that drugs were stored there at the time the warrant was issued existed independent of any future event. While the possibility of a future sale would not create its own probable cause, it would lend support to the reasonable belief that drugs were still present and being stored at 1162 North Richmond. The past sales were not "stale" in light of the fact they revealed a protracted or continuous course of conduct. It is reasonable for a prudent man to believe that illicit drugs are stored at a location where recent sales have been made, and where known or suspected drug dealers are residing.

It is of no consequence that the police waited to execute the search warrant until they had reason to believe additional drugs would be present at the duplex. It also makes no difference that they waited until the marked money was taken to 1162 North Richmond in the last sale before they executed the warrant. Probable cause existed irrespective of the presence of the "buy" money. The time, manner and place of execution of a search warrant are governed by K. S. A. 1976 Supp. 22-2502, *et seq.* A search warrant must be executed within ninety-six hours from the time of issuance (K. S. A. 22-2506), but the exact time of execution within that period should be left to the discretion of the law enforcement officers.

A trial court should review applications for search warrants with common sense and in a realistic manner, realizing they are often drawn in haste and by nonlawyers. (*United States v. Ventresca,* 380 U. S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741.) We believe in this case the trial court erred in sustaining the motion to suppress.

The judgment of the trial court is reversed and the case is remanded for further proceedings.