No. 50,266

STATE OF KANSAS, *Appellee,* v. RICHARD D. WILLIAMS, *Appellant.*

(602 P.2d 1332)

Opinion filed December 1, 1979.

*Harold E. Flaigle,* of The Law Offices of Michael D. Wilson, of Wichita, argued the cause and was on the brief for the appellant.

*James Turner,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Robert J. Sandilos,* assistant district attorney, were with him on the brief for the appellee.

*Per Curiam:* This is an appeal from convictions of two counts of aggravated kidnapping, two counts of rape, two counts of aggravated robbery, two counts of attempted first degree murder, two counts of aggravated burglary and the sentences given thereon.

The facts involved in the convictions center around three separate attacks on three separate victims. They will necessarily be somewhat extended, although we do not propose to give all the gruesome details. In presenting the facts the accused will be designated as defendant.

On November 17, 1977, the first victim went to her apartment at 431 Pennsylvania Avenue in Wichita for lunch. A black male, later identified as the defendant, knocked on her door and asked where another person lived. She told him she did not know the individual, and suggested he go next door and ask. The defendant then pushed his way inside, shoving the victim to the floor. As a

result of the defendant's forced entry, she sustained a split lip, shoulder sprain, and a head wound. The defendant then told her to lock the front door which she did. He pulled a knife with a six inch blade, forced the victim into the bedroom and told her to disrobe. She disrobed at knife point. The defendant demanded money. The victim dumped her purse on the floor and gave the defendant $3.00 in change. He then told her to lie down on the couch and with knife in hand, raped her. After completing the act the defendant directed the victim from room to room searching for more money. He then returned her to the couch where he again raped her at knife point. He directed her to dress and drive him somewhere. The defendant took his victim to her car and directed that she drive him around. She was admonished not to call the police. He eventually directed her to 24th and Lorraine in Wichita, where he got out of the car. She gave a description of her assailant to the Wichita Police Department.

The victim tentatively identified the defendant, who was lightly bearded when he attacked her but clean shaven at the lineup. She positively identified the defendant at trial.

The second victim was sleeping at her home at 446 Cleveland in Wichita at 11:00 a.m. on December 12, 1977, when a black male knocked on her door. The man, later identified as the defendant, asked if Pete was there, then asked to use her phone. When told that she did not have a phone, the defendant grabbed her wrist and forced his way into her apartment. He locked the door and forced the victim to the bedroom, striking her with his fist. He then produced a knife with a six inch blade and told her to lie on the bed so that he could rape her. The victim advised the defendant that it was "that time of the month." He disrobed her to verify her statement, then bound her hands and searched her apartment for valuables.

The defendant then untied the victim, seated her on a chair, and forced her at knife point to take a white pill of some sort. He then took her back into the bedroom, forced her to the bed, and fondled her. The victim positively identified the defendant at trial and at a pretrial lineup.

On December 28, 1977, the third victim was getting ready to take her young daughter to the babysitter and go to work when a black male knocked on the door and asked to use the phone. He was let in the apartment for that purpose. He then lunged at the

victim's throat and began choking her. She struggled briefly but ceased in order to avoid further serious injury. The defendant went through her purse, took her money and rummaged through the house in search of more valuables. In response to the victim's pleas to leave her and her daughter alone, the defendant struck her. She obeyed the defendant's command to strip. He demanded her wedding ring, her engagement ring and her watch. Then, with a screwdriver in his hand, the defendant proceeded to rape the victim.

The defendant wanted the victim's Lloyds AM-FM Stereo. He told her to take the stereo out to her car, and that if she did anything he would kill her daughter. The victim was forced to tie up her daughter with speaker wires. The defendant then tied up the victim and gagged both of them. After expressing displeasure because the victim could stand up, he told her and her daughter to lie on the bed and placed two chairs over them to prevent movement.

At the foot of the victim's bed was a box of Christmas decorations. The defendant lit a number of matches and dropped them into the box, setting the contents on fire. He then set another box of papers on fire, pulled a desk across the bedroom door and left. When a relative of the victim called shortly thereafter, she managed to knock the receiver off the hook and ask for help. The police were notified and the fires set by the defendant were put out. The victim described her assailant and his apparel to the police. She also identified the defendant at trial as her assailant.

Other facts will be stated as we discuss the issues to which they apply.

The defendant has appealed from the convictions on numerous grounds.

1. The appellant first contends that the trial court erred in admitting evidence seized from 449 Indiana on December 28, 1977, under a search warrant which he claims relied in part on information gathered during an illegal entry and search of appellant's apartment, and was therefore inadmissible under the "fruit of the poisonous tree" doctrine.

A determination of this issue requires facts not directly pertaining to the crimes previously presented.

At 8:47 a.m. on December 28, 1977, Wichita Police Officer Bolinger received a report of the third victim's rape. He checked

the neighborhood of 1414 East Third, and received a radio call from Officer Krist, who advised that a person fitting the suspect's description lived at 449 Cleveland. The description, taken from the victim by Officer Merrell, included the fact that her Chrysler automobile and stereo were missing. About the time the defendant's residence was located, the victim's Chrysler automobile was found abandoned at Third and Ohio Streets with none of the missing property inside. Officer Krist subsequently contacted the officers who had assembled at 449 Cleveland and advised them that the correct address was actually 449 Indiana, one block west of Cleveland. The officers proceeded there and approached the front door. Officer Patrick knocked loudly on the door, commenting that he heard something inside. Minutes later Officer Bolinger went around to the rear door of the residence and opened the screen door.

As he attempted to look into the window in the door, he pushed his head against it and the door opened. At that time, believing someone to be inside, he went in. He was joined by Officer Patrick who went inside with him. The officers searched the inside for the appellant and after finding no one they left the dwelling. Before leaving, Officer Bolinger observed a key ring, some welding gloves, and a man's billfold lying on top of the television in the living room. Bolinger felt the keys might be those still missing from the third victim's apartment, and mentioned those keys to Detective Allen who arrived later at the scene.

Detective Allen was advised the victim had identified a mugshot of the appellant, Richard Williams, as her assailant. He was also advised by Detective King and Officer Bolinger of details of the crime and the officers' earlier attempt to arrest the appellant at his house. Detective Allen and an assistant district attorney who accompanied him to the scene returned to the district attorney's office where a search warrant was drawn for 449 Indiana. A search warrant was obtained based on Detective Allen's affidavit.

Seized during execution of the search warrant at the defendant's residence that afternoon were items introduced as exhibits.

The objection made by appellant's counsel reads:

"Your Honor, my objection to these exhibits and the photographs that they depict is strictly on the ground that they're inadmissible because there was no probable cause for Officer Bolinger to have not only gotten in the door but to have had an opportunity to observe the keys as depicted in State's proposed Exhibit 73."

Over the objection of the State as untimely the trial court entertained appellant's motion but denied it for reasons stated:

"At that time the initial intrusion was not an intrusion, based on the evidence before the Court, for a search of items, but for a search of a person upon which there would have been probable cause for such an entry and search in view of the evidence on the record.

"Second, that the discovery of the evidence was inadvertent as indicated and testified to by Officer Bolinger who said he was looking for the person of Richard D. Williams."

The trial court summarized the evidence pertinent to its ruling on the motion as follows:

"The evidence summarized, or a portion of the evidence summarized, dealing with matters that preceded the issuance of a search warrant for items of personal property were that officers of the Wichita Police Department, based on information given them by an alleged rape victim in a very short period of time, the rape victim having identified a photograph of Richard D. Williams, proceeded to the residence of Richard D. Williams, and in knocking at the front door one of the officers who is before the Court heard what he thought was a sound of someone inside. I think that the entry in the back door in the manner indicated, or probably in any manner, would have been proper at that point in a search for the individual, Richard D. Williams."

The trial court made the following comments concerning the search warrant affidavit of Detective Allen:

"I would call special attention to the testimony of Detective Allen, that in his determination about procuring or attempting to procure a search warrant for physical items after entry had been gained looking for the person of Richard D. Williams, that he, Detective Allen, said that what information he has about the keys from Officer Bolinger, or whatever source, was vague and that they had no significance at all in relating that information to the Court in the application for a search warrant."

We are forced to agree with the conclusion of the trial court. The search warrant obtained on Detective Allen's affidavit was not "tainted" by the officer's initial entry.

Even though we assume the illegality of the search of defendant's apartment we would be forced to recognize the limitation this court has placed on the "fruit of the poisonous tree" doctrine. In *State v. Childers,* 222 Kan. 32, 563 P.2d 999 (1977), we stated at pages 40-41 of the opinion:

"Assuming the illegality of the search, the question narrows to one of determining whether defendant's statements were brought about by that illegality rather than by means sufficiently distinguishable to be purged of the primary

taint. . . . The doctrine is inapplicable, however, where the state learns of the evidence from an independent source or where the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint. . . . [T]he issue whether challenged evidence was so connected with an illegal search as to be tainted was presented on a motion to suppress. . . .

" '. . . This was the issue of fact which had to be determined by the district court at the hearing on the motion to suppress.' "

2. The appellant further contends the affidavit on which the search warrant was obtained was insufficient to provide probable cause that the items listed could be found inside appellant's residence.

The affidavit stated the following facts: The third victim identified the defendant by mug-shot as her assailant and her car was found abandoned a few blocks from the appellant's house, minutes after it was stolen. The car did not contain the stereo or any other property taken from the victim's apartment, although she herself placed the stereo in the car at the direction of defendant. The defendant's car was parked at his residence at 449 Indiana.

In considering whether statements contained in an affidavit are sufficient to show probable cause for a search warrant, this court has stated in *State v. Morgan,* 222 Kan. 149, 151, 563 P.2d 1056 (1977):

"Sufficient facts must be placed before the issuing magistrate to enable him to make an intelligent and independent determination that probable cause exists. Bald conclusions, mere affirmations of belief, or suspicions are not enough and, while an affidavit may be based on hearsay, there must be sufficient affirmative allegations of fact as to affiant's personal knowledge to provide a rational basis upon which a magistrate can make a judicious determination of probable cause. [Citations omitted.]

" 'Probable cause' to issue a search warrant is like a jigsaw puzzle. Bits and pieces of information are fitted together until a picture is formed which leads a reasonably prudent person to believe a crime has been or is being committed and that evidence of the crime may be found on a particular person or in a place or means of conveyance."

We find no merit in appellant's contention.

3. The appellant next contends that the trial court erred as a matter of law in failing to sustain his motion for discharge on count one, aggravated kidnapping, at the close of the State's case.

Count one of the information charged the appellant as follows:

"[O]n or about the 28th day of December A.D., 1977, one RICHARD D. WIL-LIAMS did then and there unlawfully, willfully take and confine the persons of [the victims] by force with the intent to hold the said [the victims] to facilitate the

commission of the crimes of Rape and Aggravated Robbery and did inflict bodily harm upon the person of [the victim];"

At the close of the State's evidence, the information was amended to include in count one "to facilitate flight." Shortly thereafter, defense counsel moved for discharge on count one, arguing that:

"I think the evidence could indicate the assailant, whoever he may be, did remove both the alleged victim and her child from ·at least the living room or dining area into a bedroom and that could be for nothing more than convenience or comfort and no other reason."

The jury instruction was consistent with count one as finally amended.

The appellant contends that the taking and confinement of the third victim and her child fail the test stated in *State v. Buggs,* 219 Kan. 203, Syl. ¶ 10, 547 P.2d 720 (1976):

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(*a*) Must not be slight, inconsequential and merely incidental to the other crime;

"(*b*) Must not be a kind inherent in the nature of the other crime; and

"(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detention."

The third victim testified that the appellant struck and robbed her and then rummaged through her house for valuables. He raped her while armed with a screwdriver, stole her stereo, and threatened to kill her child. He forced the victim to tie up her child and then bound and gagged the mother. The defendant placed two chairs over them as they lay on the bed to prevent them from moving.

Appellant contends that his actions as recited above are akin to "[t]he removal of a rape victim from room to room within a dwelling solely for the convenience and the comfort" of the rapist, *State v. Buggs,* 219 Kan. at 216, and thus failed to constitute kidnapping as a matter of law.

Applying the test laid down in *State v. Buggs,* 219 Kan. 203, to appellant's acts, the binding, gagging and securing of his victims by placing chairs over them, and placing a desk across the bedroom door, were not acts incidental to the crimes of rape or aggravated robbery, nor were those acts inherent in either crime. The appellant's acts further substantially lessened the risk of

detection of his crimes and facilitated flight. We find no merit in this contention.

4. The appellant next charges error in failing to sustain his motion, at the close of the State's case, as to count one, aggravated kidnapping, as it was multiplicitous with the charges of attempted murder in counts four and five of the information.

Appellant further contends that for the two different crimes—aggravated kidnapping and attempted murder—the State relied upon the facts concerning one event which took place in the third victim's apartment, *i.e.*, the removal to the bedroom, the tying up of the third victim and her daughter, and setting fire to two boxes of papers in the bedroom.

The State contends that the rape of the third victim and the confining of her and her child could provide bodily harm sufficient to constitute aggravated kidnapping. It further contends that proof of the overt act of setting fires was neither necessary nor relied upon in establishing bodily harm to support kidnapping.

We have stated that multiplicity in a criminal pleading is the charging of a single offense in several counts. The State may not split a single offense into separate parts. Where there is a single wrongful act it generally will not furnish the basis for more than one criminal prosecution. *State v. Dorsey,* 224 Kan. 152, 578 P.2d 261 (1978).

The test to be applied in this case was stated in *State v. Cory,* 211 Kan. 528, Syl. ¶ 1, 506 P.2d 1115 (1973):

"Where the same conduct of a defendant constitutes a violation of two statutory proscriptions the test of duplicitous offenses is whether each requires proof of an element of the offense which the other does not and if so the offenses are not duplicitous."

It was also stated in *Cory* at page 530:

"When two offenses are charged in separate counts of one information the test to be applied is not whether the facts actually proved at trial are used to support the conviction of two offenses, it is whether the necessary elements of proof of the one crime are included in the other."

The necessary element of the proof of the offense of attempted murder of the third victim and her daughter was the setting of the fires in the bedroom. This was not a necessary element of the offense of aggravated kidnapping; the threats and use of force were quite sufficient without such element.

5. The appellant next contends the trial court erred as a matter of law in failing to sustain appellant's motion for discharge on count nine—aggravated kidnapping—at the conclusion of all the evidence. Count nine charged the taking and confining of the first victim with intent to hold her to facilitate flight and to facilitate the crime of rape.

What was the appellant's intention when he forced the victim to take him for a ride in her car after robbing and raping her twice? The jury was properly instructed on count nine. The jury no doubt thought the defendant wanted to get closer to his home and facilitate flight from the scene of his crimes as charged in the information.

We must not attempt to out-guess the jury. They heard the evidence and observed the demeanor of the witnesses.

6. The appellant suggests the trial court erred in instruction number two by failing to set out all the elements of the crime of aggravated kidnapping with regard to the third victim's child.

Count one does not attempt to charge the appellant with aggravated kidnapping of the child, but only the third victim, the mother of the child. The trial court instructed that bodily harm was inflicted only upon the third victim. The jury found the appellant guilty only of bodily harm to the third victim in count one. The trial court sentenced only on one count of aggravated kidnapping of the third victim not her child.

If appellant had any complaint on this issue it was to the language of the information. No objection was made thereto before the trial court.

We find no merit in this alleged error.

7. The appellant last contends that the trial court in sentencing appellant acted arbitrarily and without justification.

Appellant suggests that on each of the counts of which he was convicted the court imposed the maximum sentence allowable under K.S.A. 21-4501. A portion of the sentences were to run concurrently but the sentences on five counts were to run consecutively.

The appellant concedes the veracity of the test laid down in *State v. Coe*, 223 Kan. 153, 167, 574 P.2d 929 (1977), as following:

"Provided it is within statutory limits, a sentence fixed by the trial court will not be set aside on appeal unless it is so arbitrary and unreasonable it constitutes an abuse of judicial discretion. [Citations omitted.]"

Appellant contends, however, the sentence imposed in this case was arbitrary and an unreasonable use of sentencing authority. He further argues that this is true in light of the fact that the trial court did not follow the "better practice" as enunciated in *State v. Buckner*, 223 Kan. 138, Syl. ¶ 9, 574 P.2d 918 (1977):

"When the sentence imposed by the trial court exceeds the minimum, it is better practice for the trial court to make, as part of the record, a detailed statement of the facts and factors considered by the court in imposing sentence. Such a record would be of great assistance to the appellate courts in determining whether the sentencing court has abused its discretion."

He contends the record is void of any such detailed statement of the facts and factors considered in imposing sentence in the instant case and in light of the excessive sentence imposed upon defendant, the case should be remanded for proper sentencing by the trial court.

The State challenges this last statement. It quotes in its brief from a lengthy colloquy the trial court engaged in with the appellant concerning its rationale for imposition of the sentence. We will not extend this opinion by quoting from the record. It will suffice to say that the trial court considered the factors set forth in K.S.A. 21-4606 in sentencing the defendant. The contention is without merit.

A careful examination of the record discloses no errors that would justify granting any relief to appellant.

The judgment is affirmed.

FROMME, J., not participating.