No. 53,780

STATE OF KANSAS, *Appellee,* v. ELMORE MARKS, JR., *Appellant.*

(647 P.2d 1292)

Opinion filed July 16, 1982.

*Cortland E. Berry,* of Reading, argued the cause and was on the brief for the appellant.

*Jay Vander Velde,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a jury conviction of rape (K.S.A. 21-3502) and aggravated sodomy (K.S.A. 21-3506).

At approximately 10:00 p.m., July 4, 1980, the victim, a twenty-one-year-old student at Emporia State University, went to an Emporia private club called "The Attic." The club opened late because of a fireworks display that night. The victim was the club's first customer that evening. She testified she went to the club because she was upset over a recent breakup with her boyfriend.

Shortly after the victim arrived at the club, Elmore Marks, Jr. entered. He made his way to her booth and sat down. A conversation ensued with the victim talking about school and work. Marks fabricated a grandiose story about his being a Ph.D and an M.D. and how he was in the process of writing an analytical book about people. He indicated the background for the book consisted of a series of interviews with people of varied experiences. The victim naively swallowed Marks' line and agreed to be interviewed for the book.

After two drinks and an hour and a half discussion the victim agreed to go with Marks to the house of one of his friends in order that he might arrange a trip to Nassau to pay her for assisting with the book. They drove to the house, which actually belonged to Marks, and there he pretended to make reservations for the trip. Later Marks told his victim she looked nervous and gave her a small white pill as a remedy. She took the pill and became dizzy and light-headed. Marks then produced another pill virtually forcing it down her. Her dizziness grew worse. Marks led her to the bedroom where she laid down. Marks then pulled up a chair, took pad and pencil in hand and began interrogating the victim about her sex life. When she refused to answer, Marks became angry and started taking off her clothing. He also choked her briefly and attempted smothering her with a pillow. The victim fought back but her dizziness prevented her from escaping. Marks threatened if she did not stop fighting he would kill her. After a long struggle he succeeded in removing the victim's clothing and forced her to have sexual intercourse and oral

sodomy with him. After giving his victim a shower and massage, Marks drove her to her car.

Upon returning to her apartment, the victim tearfully related the episode to her roommate who called the police and drove her to the hospital. The examining physician found a lacerated area near the opening of the victim's vagina but no other bruises or marks.

Several days later the victim rode with the police and guided them to Marks' residence. A search warrant was obtained and the house was searched. Marks was arrested and charged with rape and aggravated sodomy. After conviction this appeal followed.

Appellant first challenges the sufficiency of the affidavit to obtain the search warrant. The affidavit was made by Detective Michael Lopez and consisted of a very detailed account of the assault and surrounding circumstances. It was based on Lopez's interview with the victim.

K.S.A. 22-2502 governs the issuance of search warrants:

"A search warrant shall be issued only upon the oral or written statement of any person under oath or affirmation which states facts sufficient to show probable cause that a crime has been or is being committed and which particularly describes a person, place or means of conveyance to be searched and things to be seized."

The search warrant affidavit must set forth particular facts and circumstances to allow the magistrate to make an independent evaluation of the existence of probable cause. *Franks v. Delaware,* 438 U.S. 154, 165, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978). Bald conclusions, mere affirmations of belief or suspicions are not enough. An affidavit may be based on hearsay, but it must state "sufficient affirmative allegations of fact as to affiant's personal knowledge" to allow the magistrate to rationally reach his independent decision. *State v. Williams,* 226 Kan. 688, 693, 602 P.2d 1332 (1979); *State v. Morgan,* 222 Kan. 149, 563 P.2d 1056 (1977).

"Probable cause" to issue a search warrant is not easily defined. This court has, however, compared it to a jigsaw puzzle where, "[b]its and pieces of information are fitted together until a picture is formed which leads a reasonably prudent person to believe a crime has been or is being committed and that evidence of the crime may be found on a particular person or in a place or means of conveyance." *State v. Morgan,* 222 Kan. at 151. In any event, probable cause does not require the same type of specific

evidence of each element of the offense as would be needed to support a conviction. *State v. Weigel,* 228 Kan. 194, 197, 612 P.2d 636 (1980).

Here the affidavit stated in detail the facts surrounding the alleged rape. It contained much more than bald conclusions or suspicions. We conclude the magistrate who examined the affidavit was justified in issuing the warrant.

Appellant next contends certain items taken from his residence which are not listed on the search warrant were erroneously admitted into evidence. The search warrant authorized police to seize:

"[A] multi-flowered print Hawaiian style shirt; men's sandals; a gold chain necklace having a gold coin on it with the figure of Christ standing with arms outstretched; small white tablets with disecting [*sic*] lines across the center; yellow/green flowered shower curtain; body hair located in the tub of the bathroom; flower print bedspread; bed sheet located on bed of the bedroom; and to take photographs of the exterior and interior of the premises of 305 Cottonwood and the 1965 Plymouth Barracuda bearing Michigan license SHP938 and a 1977 Plymouth bearing Michigan license NBD409."

Officers actually seized numerous other items including a shower brush, several gold rings, a plastic bag containing "green vegetation" and a hashish pipe.

An examination of the record shows there is no merit to appellant's contention. The only items from the search admitted in evidence at trial were the necklace, the Hawaiian shirt, and photographs taken of appellant's car. The items seized but not listed on the search warrant were not offered into evidence at trial. There was no erroneous admission of evidence.

Appellant next argues there was no probable cause for his warrantless arrest.

Appellant was arrested July 8, 1980, at the same time the search warrant was executed. Officers based their decision to arrest Marks on the same information that was contained in the affidavit for the search warrant. K.S.A. 22-2401 states: "A law enforcement officer may arrest a person when: . . . (*c*) He has probable cause to believe that the person is committing or has committed (1) A felony . . . ."

"Probable cause for arrest without a warrant depends upon the probabilities arising from known facts and circumstances and exists when the practical considerations of everyday life would lead a reasonable and prudent officer to believe a felony has been or is being committed." *State v. Brocato,* 222 Kan. 201, 203, 563 P.2d 470 (1977).

See also *State v. Morgan,* 231 Kan. 472, 646 P.2d 1064 (1982).

There was ample evidence to support the warrantless arrest. The information provided by the victim was detailed and thorough. Police also had within their knowledge the doctor's report that the victim suffered from a laceration near her vaginal opening. The arresting officers were justified in believing Elmore Marks had committed a felony.

Appellant next challenges the victim's pretrial identification of him from a photographic lineup.

On July 24, 1980, Detective Lopez assembled a photographic lineup consisting of mug shots of eight different men whose facial characteristics were similar. Out of those eight the victim picked appellant's picture as the one that came "closest to the guy." Appellant claims this pretrial identification was suggestive because his picture was the only one showing the date of "7-9-80" and appellant was the only person wearing a T-shirt bearing the letters "LYSO," which stands for Lyon County Sheriff's Office.

In *State v. Nesmith,* 220 Kan. 146, 551 P.2d 896 (1976), this court stated the test regarding the propriety of a pretrial "photographic identification is whether it was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " See also *Manson v. Brathwaite,* 432 U.S. 98, 109-14, 53 L.Ed.2d 140, 97 S.Ct. 2243 (1977). Even if it is assumed the pretrial identification procedure was unnecessarily suggestive it must nonetheless be remembered that "reliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson v. Brathwaite,* 432 U.S. at 114. Thus an in-court identification may be capable of standing on its own even though preceded by a deficient pretrial confrontation. *State v. Ponds,* 227 Kan. 627, 630, 608 P.2d 946 (1980).

In *Neil v. Biggers,* 409 U.S. 188, 199-200, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972), the Supreme Court suggested a number of factors to be considered in resolving the reliability inquiry:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

See also *State v. Baker,* 227 Kan. 377, 379, 607 P.2d 61 (1980); *State v. Hall,* 220 Kan. 712, 717, 556 P.2d 413 (1976); *State v. Bey,* 217 Kan. 251, 257, 535 P.2d 881 (1975).

At trial the victim identified appellant as the person who assaulted her. The foregoing factors support the reliability of the identification. The victim spent two or three hours with her assailant. The victim was further able to describe appellant's clothes and facial characteristics accurately before the confrontation. At both the preliminary hearing and trial the victim demonstrated an adequate degree of certainty that her identification was correct. We find the in-court identification reliable.

Appellant contends he was denied his 6th Amendment right to counsel because his attorney was not present at the pretrial photographic lineup.

The 6th Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." That right only applies, however, to so-called "critical" stages of the proceedings. See *United States v. Wade*, 388 U.S. 218, 224, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967). In *United States v. Ash*, 413 U.S. 300, 301, 37 L.Ed.2d 619, 93 S.Ct. 2568 (1973), the issue was:

"[W]hether the Sixth Amendment grants an accused the right to have counsel present whenever the government conducts a post-indictment photographic display, containing a picture of the accused, for the purpose of allowing a witness to attempt an identification of the offender."

The court held it did not, reasoning:

"Since the accused himself is not present at the time of the photographic display . . . no possibility arises that the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary. Similarly, the counsel guarantee would not be used to produce equality in a trial-like adversary confrontation." 413 U.S. at 317.

*United States v. Ash* is controlling. Appellant had no right to counsel at the pretrial photographic lineup.

Appellant next argues the trial court erred in conducting a conference for the exercise of peremptory challenges outside his presence.

Voir dire was conducted in the presence of the prospective jurors, the judge, the prosecutor, defense counsel and appellant. Appellant and his counsel then discussed which jurors should be stricken from the panel. Subsequently the judge, prosecutor and defense counsel held a conference in the judge's chambers for the

purpose of announcing the peremptory challenges allowed each party under K.S.A. 22-3412(1)(*b*). The judge then reconvened the prospective jurors and stated on the record the panel members to be struck. Appellant argues he should have been allowed to attend the conference in the judge's chambers.

K.S.A. 22-3405(1) provides: "The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law."

In *State v. Mantz,* 222 Kan. 453, 565 P.2d 612 (1977), we discussed the effect of the defendant's absence from an in-chamber conference among the trial judge and counsel concerning instructions. In holding this absence did not amount to reversible error we stated:

"The general rule clearly appears to be that a defendant's constitutional and statutory rights to be present at his trial do not encompass proceedings before the court involving matters of law. Such rights are violated only if the defendant is absent when the jury is hearing the case or where he is prevented from such other proceedings where his presence is essential to a fair and just determination of a substantial issue." 222 Kan. at 463.

See also *State v. Sanders,* 227 Kan. 892, 893, 610 P.2d 633 (1980); *State v. Sandstrom,* 225 Kan. 717, 721, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979).

We hold *Mantz* controls. The conference regarding the peremptory challenges dealt with a matter of law. It was held outside the presence of the jury. Appellant's presence was not essential to a fair trial.

Appellant next contends the State did not comply with the statutory discovery directives of K.S.A. 22-3212. Specifically he argues the State did not provide defense counsel with the results of the rape kit laboratory report.

The record reveals the State did provide appellant with the results of the examination. Indeed, the KBI laboratory report showing the presence of acid phosphatase, an enzyme found in high concentration in seminal fluid, was given to defense counsel before trial. Essentially, appellant objects because he was not provided the "negative findings" of the rape kit examination which were contained in the working notes of the laboratory technicians.

Arguably, since the appellant did not deny he had sexual

intercourse with the victim, basing his whole defense on consent, the results of the rape kit examination are irrelevant. However, due to the seriousness of appellant's claim that the State should have provided him with the working notes of those who conducted the laboratory experiments on the rape kit, we will examine the issue.

K.S.A. 22-3212 states, in pertinent part:

"(1) Upon request, the prosecuting attorney shall permit the defendant to inspect and copy or photograph any relevant . . . . (*b*) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney . . . .

. . . . .

"(7) . . . . If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

We hold this statute entitles a defendant to the working notes of the forensic chemist who examines a rape kit. It does not, however, require the prosecutor to obtain those notes for defense counsel unless they are in the State's file. All the prosecutor must do is "permit the defendant to inspect and copy or photograph any relevant" notes taken during the rape kit examination. Here the State provided defense counsel with the actual laboratory report. The working notes were not contained in its file and were not seen by the prosecutor prior to trial. They were, however, available to defense counsel upon request from those who performed the experiments. Additionally, K.S.A. 22-3212 grants to the trial court a certain amount of discretion. *State v. McGee,* 224 Kan. 173, 177, 578 P.2d 269 (1978). Here the trial court gave defense counsel every opportunity to discover the worksheets. Prior to trial it allowed counsel to call the two criminalists involved and inquire as to what they would testify to. Then at trial when the two witnesses brought their working notes with them the trial court called a recess to allow defense counsel time to copy and examine the notes. In light of all the circumstances no reversible error was shown.

Next appellant objects to the evidence of the results of the rape

examination kit as admitted through the testimony of the two criminalists who performed the experiments. Appellant argues there was no showing the report supported an inference of sexual intercourse. This argument is baseless. The presence of acid phosphatase was relevant in proving sexual intercourse. In addition appellant admitted sexual intercourse took place. As such the rape kit evidence was corroborated and admissible.

Appellant next attacks the admission of the expert testimony of Dr. Herbert Modlin, a board certified psychiatrist and neurologist who practices psychiatry and teaches at the Menninger Foundation. He is also one of a small number of doctors to be certified in the field of forensic psychiatry.

During his testimony Dr. Modlin discussed the diagnosis and treatment of "post traumatic stress disorders." The condition is caused when a person experiences a "very frightening, stressful event" and manifests itself in a kind of "psychological hangover." According to Dr. Modlin a type of post traumatic stress disorder labeled "rape trauma syndrome" is the result of a sexual assault. Symptoms of rape trauma syndrome include fear of offender retaliation, fear of being raped again, fear of being home alone, fear of men in general, fear of being out alone, sleep disturbance, change in eating habits and sense of shame.

Dr. Modlin examined the victim two weeks after the rape. Based upon his psychiatric evaluation Dr. Modlin testified he was of the opinion she had been the victim of "a frightening assault, an attack" and that she was suffering from the post-traumatic stress disorder known as rape trauma syndrome.

Admission of expert testimony is governed by K.S.A. 60-456(*b*) and (*d*):

"(*b*) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

. . . . .

"(*d*) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of fact."

Appellant does not contend Dr. Modlin lacks the requisite "special knowledge, skill, experience or training," to testify as an expert in this area. He argues that expert testimony regarding rape

trauma syndrome should be per se inadmissible in a case where consent is the defense because it invades the province of the jury.

The identification of rape trauma syndrome is a relatively new psychiatric development. Even so, if the presence of rape trauma syndrome is detectable and reliable as evidence that a forcible assault did take place, it is relevant when a defendant argues the victim consented to sexual intercourse. As such an expert's opinion does not invade the province of the jury. It is merely offered as any other evidence, with the expert subject to cross-examination and the jury left to determine its weight.

In *State v. Washington,* 229 Kan. 47, 53, 622 P.2d 986 (1981), we stated "before a scientific opinion may be received in evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field." See also *Frye v. United States,* 54 App. D.C. 46, 293 F. 1013 (D.C. Cir. 1923). Although *Washington* involved physical scientific evidence, the same test is applicable to the admission of testimony regarding a psychiatric diagnosis. See *e.g., Hughes v. Mathews,* 576 F.2d 1250, 1258 (7th Cir. 1978).

An examination of the literature clearly demonstrates that the so-called "rape trauma syndrome" is generally accepted to be a common reaction to sexual assault. See McCombie, The Rape Crisis Intervention Handbook, pp. 124-26 (1980); Comprehensive Textbook of Psychiatry §§ 21.1d, 24.15, pp. 1519, 1804-05 (3rd ed. 1980); Warner, Rape & Sexual Assault, pp. 145-49 (1980); Burgess & Holmstrom, Rape: Crisis & Recovery, pp. 35-47 (1979); Katz & Mazur, Understanding the Rape Victim, pp. 215-31 (1979); E. Hilberman, The Rape Victim, p. 36 (1976); Burgess & Holmstrom, Rape: Victims of Crisis, pp. 37-51 (1974). As such, qualified expert psychiatric testimony regarding the existence of rape trauma syndrome is relevant and admissible in a case such as this where the defense is consent.

Appellant argues even if testimony concerning rape trauma syndrome is generally admissible, Dr. Modlin's testimony here was not based on "data perceived by or personally known or made known to the witness at the hearing." Essentially, his contention is that Dr. Modlin's opinion was based solely on what the victim told him during psychiatric evaluation and that because of this his conclusion was grounded upon incompetent hearsay evidence.

Appellant relies on *Klein v. Wells,* 194 Kan. 528, 400 P.2d 1002 (1965), wherein a physician gave an expert opinion based upon a history given by the plaintiff, consultation with the attending physician to the plaintiff, the attending physician's notes and records and upon x-rays and hospital records. There the court stated:

"It has long been settled that an expert witness may base his opinion upon matters within his personal knowledge or observation, or upon competent evidence in the case, or upon both. Likewise, it has been held that a physician may not testify as to what a patient said in respect to past history of the case, or the cause or duration of the injury. Neither can he give an opinion based partially upon his personal examination and partially upon what the patient told him in reference to the past history of the case, and also upon statements of third persons in reference thereto. [Citations omitted.] The history of the case is within the hearsay rule and therefore is not a proper foundation for an opinion based on competent evidence. If, however, the so-called 'history' is made up of facts which in themselves are competent evidence, and which are in evidence, then any objection to the use of such history must fall." 194 Kan. at 539.

Although the history was within the hearsay rule the court held the doctor's testimony was competent because the facts comprising the history had actually been put in evidence.

This case is well within the exception noted in *Klein v. Wells.* The "history" of this case is made up of facts which were received into evidence through the testimony of the victim and her roommate. Further, Dr. Modlin's testimony was based on symptoms he noted during his psychiatric evaluation of the victim. In this sense his conclusions were based on data personally perceived by him.

Admissibility of expert testimony pursuant to K.S.A. 60-456(*b*), lies within the sound discretion of the trial court, and the court's decision will not be reversed on appeal unless it is shown that discretion was abused. *State v. Washington,* 229 Kan. at 56; *Lindquist v. Ayerst Laboratories, Inc.,* 227 Kan. 308, 316, 607 P.2d 1339 (1980); *State v. Reed,* 226 Kan. 519, 521, 601 P.2d 1125 (1979). Here the judge considered the qualifications of Dr. Modlin, the basis and relevancy of his testimony and allowed him to testify. There is no showing of abuse of discretion.

Appellant finally contends the trial court acted "prejudicially, arbitrarily and without justification" in sentencing appellant to two concurrent terms of ten to twenty years.

K.S.A. 21-4606 states:

"(1) In sentencing a person to prison, the court, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, shall fix the lowest minimum term which, in the opinion of said court, is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime.

"(2) The following factors, while not controlling, shall be considered by the court in fixing the minimum term of imprisonment:

"(a) The defendant's history of prior criminal activity;

"(b) The extent of the harm caused by the defendant's criminal conduct;

"(c) Whether the defendant intended that his criminal conduct would cause or threaten serious harm;

"(d) The degree of the defendant's provocation;

"(e) Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

"(f) Whether the victim of the defendant's criminal conduct induced or facilitated its commission;

"(g) Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained."

Both aggravated sodomy and rape are class B felonies. The minimum term for a class B felony is five to fifteen years; the maximum is twenty years to life. K.S.A. 21-4501. When a sentence is within the statutory limits as set forth by the legislature, it will not be disturbed on appeal in the absence of special circumstances showing an abuse of discretion. *State v. McDaniel & Owens,* 228 Kan. 172, 185, 612 P.2d 1231 (1980); *State v. Goering,* 225 Kan. 755, Syl. ¶ 8, 594 P.2d 194 (1979).

Here the sentence was within the limits of K.S.A. 21-4501. Further, the record reveals the trial court gave careful consideration to all the factors set out in K.S.A. 21-4606. There was no abuse of discretion.

The judgment is affirmed.