The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Russell Millard HAMPTON,
Defendant-Appellant.

No. 85CA0019.

Colorado Court of Appeals,
Div. III.

June 5, 1986.

Rehearing Denied July 3, 1986.

Certiorari Granted (People)
Nov. 17, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Curt P. Kriksciun, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Steven J. Barr, Colorado Springs, for defendant-appellant.

METZGER, Judge.

Defendant, Russell Millard Hampton, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of first degree sexual assault and two habitual criminal counts. We reverse and remand for a new trial.

On January 16, 1984, the district court received defendant's request for final disposition of all charges pending against him. Pursuant to the request, defendant was removed from a federal penitentiary in Mississippi and brought to Colorado. Before trial, defendant sought a dismissal for failure to bring him to trial within 180 days of his request for final disposition as required by the Interstate Agreement on Detainers. The motion was denied.

The victim testified at trial to the following events. She first met the defendant in July of 1983 when he opened an account at the bank where she worked. She agreed to a first date with the defendant on August 9. After drinks at a local bar, the two of them returned to the victim's apartment where she was beaten and sexually assaulted by the defendant.

On cross-examination, the victim admitted that 89 days had elapsed between the alleged crime and her formal report to the police.

The prosecution then introduced evidence through a victim services employee who was qualified as an expert in "victimology," specifically the behavioral and emotional responses of the typical sexual assault victim, often referred to as the "rape trauma syndrome." Although the expert had not examined the victim, she was permitted to testify over defendant's objection. The expert described the stages of rape trauma syndrome and some of the characteristics exhibited by a typical sexual as-

sault victim. The expert explained why the typical sexual assault victim may delay or fail to report the crime.

Several friends and acquaintances of the victim then testified, describing the victim's behavior after the incident as consistent with the rape trauma syndrome symptoms the expert had described. The prosecution also introduced similar transaction evidence concerning the events surrounding a prior third degree assault by the defendant. The victim of that assault testified that the defendant had assaulted her when she resisted his sexual advances.

Defendant presented three witnesses who testified that he was with them at a business meeting on the evening in question. Defendant did not testify.

After his conviction, defendant filed a motion for new trial which included an affidavit from one of the jurors. The affidavit stated that during jury deliberations, the fact that defendant did not take the stand was discussed and some of the jurors appeared to use defendant's failure to testify as a factor in their decisions to find him guilty. The trial court denied the motion.

## I.

Defendant first contends that the trial court erred when it admitted the expert testimony concerning "rape trauma syndrome." We agree.

The term "rape trauma syndrome" refers to a group of what seem to be common behavioral symptoms or characteristics observed in women who have been subjècted to the trauma of sexual assault. Colorado courts have not ruled directly on the admissibility of rape trauma syndrome evidence. However, in *People v. Farley*, 712 P.2d 1116 (Colo.App.1985) (cert. granted January 31, 1986), Judge Smith, in his dissent, discussed the unreliability and possible prejudice which may arise from the admission of such testimony.

Other state courts which have addressed the admissibility of rape trauma syndrome evidence are divided on the issue. *See* Annot., 42 A.L.R. 4th 879 (1985). Those courts which admit the evidence have generally limited it to those instances in which the act of sexual intercourse is not an issue and the defense of consent is raised. *See State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982); *State v. Liddell*, 685 P.2d 918 (Mont.1984); *see also State v. Bressman*, 236 Kan. 296, 689 P.2d 901 (1984) (further limiting *State v. Marks, supra.)* However, the general trend is to find rape trauma syndrome evidence inadmissible when it is offered to prove that a sexual assault, in fact, occurred. *See People v. Bledsoe*, 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984); *State v. Saldana*, 324 N.W.2d 227 (Minn.1982); *State v. Taylor*, 663 S.W.2d 235 (Mo.1984) (defense of consent raised).

We believe the rule holding rape trauma syndrome evidence inadmissible is the better reasoned one, and adopt it for the following reasons.

■ To be admissible at trial, expert scientific testimony must have reached a general standard of acceptance within the scientific community. *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (D.C.Cir.1923). This test has been adopted in Colorado to insure the reliability of scientific testimony. *People v. Anderson*, 637 P.2d 354 (Colo. 1981); *People v. Quintanar*, 659 P.2d 710 (Colo.App.1982). The courts which have rejected rape trauma syndrome evidence have applied the *"Frye"* test, and have found such evidence unreliable to prove that a sexual assault occurred in a particular case. *See People v. Bledsoe, supra; State v. Taylor, supra; State v. Saldana, supra.*

The concept of a rape trauma syndrome, unlike fingerprints or blood tests, was not developed to determine the truth or accuracy of whether a particular event has occurred. Instead, it was devised to assist counselors to identify, predict, and treat the emotional problems of sexual assault victims. *See People v. Bledsoe, supra.* Many of the symptoms characteristic of the syndrome may follow any psychologically traumatic event, and are not limited to sexual assault victims. American Psychiatric Ass'n, *Diagnostic & Statistical Manual of*

*Mental Disorders* § 236 (3rd Ed.1980). Given the purpose for which the syndrome was developed and the broadly defined symptoms which could result from other traumatic events, we conclude that rape trauma syndrome evidence does not meet the *"Frye"* test and, therefore, does not have sufficient indicia of reliability to be admissible on the issue of whether a sexual assault in fact has occurred.

■ The People contend that here the rape trauma syndrome testimony was offered only to provide an explanation for the victim's failure to report the crime promptly, after the defense had highlighted that fact during its cross-examination of the victim. They rely on *People v. Bledsoe, supra,* which implies in dictum that expert testimony may be appropriate in rebuttal to aid the jury by explaining possible misconceptions or myths about sexual assault, and to explain why a sexual assault victim might delay in reporting the crime. *See also People v. Roscoe,* 168 Cal.App.3d 1093, 215 Cal.Reptr. 45 (1985); *see generally* Lizotte, *The Uniqueness of Rape: Reporting Assaultive Violence to the Police,* 31 Crime & Delinquency 169 (1985). They assert that the evidence was not introduced to show that a sexual assault had occurred but, instead, was offered to rebut the defendant's use of the victim's reporting delay to suggest that no sexual assault had occurred.

■ We reject this contention. Because of its unreliability, we hold that rape trauma syndrome evidence is per se inadmissible in sexual assault trials. *See People v. Anderson, supra.*

## II.

■ Defendant also contends that the trial court erred when it denied his motion to dismiss based on the speedy trial requirement of the Interstate Agreement on Detainers. We disagree.

A prisoner who has a detainer lodged against him:

"shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court ... written ... request for a final disposition ... provided that for good cause shown in open court, the prisoner or his counsel being present, the court ... may grant any necessary or reasonable continuance." Section 24–60–501(III)(a), C.R.S. (1982 Repl.Vol. 10).

Under this statute, where a continuance, defined as an adjournment or postponement, is acquiesced in, or granted at the request of the prisoner or his attorney, the delay caused thereby is to be excluded from the computation of the 180–day limitation. *See Simakis v. District Court,* 194 Colo. 436, 577 P.2d 3 (1978); *People v. Anderson,* 649 P.2d 720 (Colo.App.1982).

Defendant argues that the delay from June 18 until July 16 was improperly attributed to him. We disagree.

■ During a court appearance on May 18, the trial court asked defense counsel, "Would the 18th of June be a trial date we could all aim at?" Defense counsel responded that, because of a previous civil setting on that date, he would be "a little reluctant." The trial court again suggested setting the trial on June 18th with the understanding that a continuance would be granted if necessary. Defense counsel then requested an alternate date. The trial court stated its next possible date would be July 16th, but noted that this case would be second to a murder trial. Defense counsel responded: "Well, let's do it then, July the 16th."

Under these circumstances, we agree with the trial court that the July 16th trial date was set at the request of defense counsel for his own benefit. Accordingly, the 28–day period was properly excluded.

The exclusion of this period plus the uncontested exclusion of two other periods, deemed continuances requested on behalf of the defendant, bring this trial within the 180–day limit of the statute. Therefore, we reject defendant's speedy trial assertions.

## III.

Defendant next argues that the trial court was collaterally estopped from admitting evidence of the third degree assault because that case was dismissed with prejudice before trial when the victim failed to appear. We disagree.

 Defendant relies on *People v. Arrington*, 682 P.2d 490 (Colo.App.1983), which held that the doctrine of collateral estoppel applies to the admission of similar transaction evidence. However, the application of the doctrine was limited to those instances in which the traditional elements of collateral estoppel are present: (1) identity of issues; (2) final judgment on the merits; (3) identity of the parties; and (4) full and fair opportunity to litigate the issue by the party against whom estoppel is being asserted.

Three of these four elements are absent. In contrast of *Arrington, supra*, where that defendant's acquittal acted as a "conclusive determination" of identity, here the dismissal of the third degree assault charges did not determine conclusively the contested issues. Second, there was no final judgment "on the merits" involved here, because the case was dismissed before trial. Cf. *People v. Coyle*, 654 P.2d 815 (Colo.1982); *People v. Abrahamsen*, 176 Colo. 52, 489 P.2d 206 (1971). Finally, because the case was dismissed before trial, unlike the acquittal in *Arrington, supra*, it cannot be said that the People had the requisite full and fair opportunity to litigate defendant's involvement in the prior assault. Therefore, the similar transaction evidence was properly admitted.

## IV.

Although defendant's contention concerning improper jury reliance on his failure to testify is moot in light of our reversal of the conviction, we note that such an attack upon the mental processes of jurors during deliberations is not permitted. *See People v. Black*, 725 P.2d 8 (Colo. App.1986).

The judgment is reversed and the cause is remanded for a new trial.

VAN CISE and KELLY, JJ., concur.