No. 56,698

STATE OF KANSAS, *Appellee,* v. RICHARD ROGER BRESSMAN, *Appellant.*

(689 P 2d 901)

Opinion filed October 26, 1984.

*Merle E. Parks,* of Kansas City, argued the cause and was on the brief for the appellant.

*Jerome A. Gorman,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action from jury convictions of rape (K.S.A. 1983 Supp. 21-3502) and aggravated sodomy (K.S.A. 1983 Supp. 21-3506). Many of the facts are undisputed and essentially are as follows: The victim, whom we will call Mrs. T, was separated from her husband and lived with her two and one-half year old son in Leavenworth. Several weeks earlier, her husband had moved out of the family home and was staying in the home of a mutual friend in Kansas City, Kansas. At 10:30 p.m. on May 5, 1983, Mrs. T and her son caught a ride from Leavenworth to Kansas City and proceeded to the home of the mutual friend so that she could talk with her husband. Although Mrs. T talked with him, she was not able to persuade him to come home. During the evening, the defendant, Richard Roger Bressman, arrived at the friend's home. Having failed to convince her husband to come home, Mrs. T began looking for a ride back to Leavenworth. Apparently no one wanted to furnish her transportation. She then asked defendant Bressman to drive her home and offered him $10 for gas. He reluctantly agreed and they left the friend's residence at approximately midnight in his car with defendant driving and Mrs. T and her son as passengers. At this point, the facts in the case enter the area of dispute.

According to Mrs. T's testimony, they first stopped to obtain gas and then proceeded toward Leavenworth. On the way, defendant drove the car off of Highway K-7 onto State Avenue and then proceeded along a dirt road. According to Mrs. T, defendant stopped the car, threatened her with a knife, and forced her to disrobe. Then he forced her to have vaginal and oral sex. She testified that she tried to run away from him twice. She saw the lights of a car approaching the area. She ran toward it and screamed for help. It was a patrol car with a deputy sheriff driving. The officer yelled for defendant and he came out of the woods and surrendered. Mrs. T, who was partially disrobed, dressed and awakened her son who was still peacefully sleeping in the back of defendant's vehicle. The defendant was arrested and taken to the Wyandotte County jail. Mrs. T was taken to the Bethany Medical Center for an examination.

The defendant's testimony was substantially different. He testified that he pulled off the road because he had to go to the

bathroom and felt sick to his stomach. He testified that, after the car stopped, Mrs. T began unbuttoning her shirt and asked if he wanted to have sex. The defendant testified that he declined and went into the woods to urinate and vomit. According to defendant, Mrs. T followed him into the woods. He told her to go back to the car. Shortly thereafter, the patrol car arrived, and Mrs. T told the officer that she had been raped. Defendant was then arrested. Defendant denied that he had had any sexual relations with Mrs. T or molested her at any time.

Some of the evidence presented in the case partially corroborated Mrs. T's version of the incident. Other evidence corroborated the testimony of the defendant. Mrs. T was taken to the Bethany Medical Center where all of the tests customarily made to determine whether sexual acts had taken place were made. These tests included an examination of all clothing; saliva tests; head, pubic hair, and urine analyses; vaginal swabs; and a physical examination of Mrs. T. Some of the materials were analyzed at the medical center. The remaining materials were sent to the KBI laboratories in Topeka for analysis. All of the State's expert witnesses testified that none of the tests provided any evidence to show that sexual acts had taken place. There was testimony from the deputy sheriff that, when he arrived at the scene, he observed someone running through the woods. He then saw the defendant emerge from the woods with his pants down, his zipper open, and his belt dragging on the ground. The officer also found two open knives in the woods next to a creek bed. The defendant was tried to a jury which brought in a verdict of guilty on both counts. Defendant appealed.

The first point raised by the defendant on the appeal is that the trial court erred in limiting defense counsel's cross-examination of the complaining witness regarding her past history of gonorrhea. Mrs. T testified, both at the preliminary hearing and at trial, that, during the time defendant was forcing her to engage in sexual acts, she told defendant to stop because she had gonorrhea. At that point, defendant did cease raping her and forced her to perform oral sex. In her statement to sheriff's officers, Mrs. T stated she told the defendant she had gonorrhea to get him to stop raping her. The officer inquired as to whether or not she actually had gonorrhea, and she replied that she did not. Mrs. T had gonorrhea tests at Bethany Hospital on the day of the

incident which were negative. She had been treated for gonorrhea not long before the incident of May 5, 1983.

Prior to trial, defense counsel filed a motion in limine to determine the extent to which he could inquire into Mrs. T's past history or treatment for gonorrhea. In his argument, he mentioned records of the City-County Health Department, but those medical records were not offered. The State contended that the matter was completely irrelevant, because the medical tests of Mrs. T made on the day of the incident established that she did not have gonorrhea and, therefore, any prior history of gonorrhea was irrelevant and inadmissible since it inferentially involved prior sexual conduct and was inadmissible under the rape shield statute (K.S.A. 60-447[a] [Weeks], subsequently transferred to K.S.A. 1983 Supp. 21-3525). K.S.A. 1983 Supp. 21-3525(2) provides:

"(2) Except as provided in subsection (3), in any prosecution to which this section applies, evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, and no reference shall be made thereto in the presence of the jury, except under the following conditions: The defendant shall make a written motion to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The motion must be made at least seven days before the commencement of the trial unless that requirement is waived by the court. The motion shall state the nature of such evidence or testimony and its relevancy and shall be accompanied by an affidavit in which an offer of proof of the previous sexual conduct of the complaining witness is stated. The court shall conduct a hearing on the motion in camera. At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the previous sexual conduct of the complaining witness is relevant and is not otherwise inadmissible as evidence, the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted. The defendant may then offer evidence and question witnesses in accordance with the order of the court."

It should be noted that the defendant filed a timely motion for admission of the testimony concerning the complaining witness's previous history of gonorrhea. The matter was presented to the trial court which held that the defendant would not be allowed to inquire or introduce evidence as to her prior history of gonorrhea. Stated simply, it is the position of defendant that he was not bringing up the subject to embarrass the complaining witness. Defendant contends that, since she testified that she told the defendant that she had gonorrhea and later made a statement to the sheriff's officer denying that she had gonorrhea,

he had the right to bring up evidence of her prior history of gonorrhea in order to attack her credibility. It is the position of the State that the trial court did not abuse its discretion in excluding the testimony, because whether or not the complaining witness had had gonorrhea at some time in the past was not material, since the medical test taken on the day of the incident showed that she did not have gonorrhea.

It should be noted that, at the trial, Mrs. T simply testified that she told defendant she had gonorrhea to stop further sexual assaults upon her. We have concluded that the trial court did not abuse its discretion in prohibiting cross-examination of the complaining witness about her prior history of gonorrhea. This court has held that a trial court's ruling on a motion in limine excluding evidence under the rape shield act will not be disturbed absent a showing of abuse of discretion. An abuse of discretion is defined as when no reasonable person would take the position adopted by the trial court. *State v. Stellwagen*, 232 Kan. 744, 659 P.2d 167 (1983).

The Court of Appeals in *In re Nichols*, 2 Kan. App. 2d 431, 434, 580 P.2d 1370, *rev. denied* 225 Kan. 844 (1978), stated that the rape shield statute allows evidence of an alleged rape victim's prior sexual conduct if it is proved relevant to any fact at issue, such as the identity of the rapist, the consent of the victim, and whether or not the defendant actually had intercourse with her. *Nichols* discusses the standard of review in cases dealing with the rape shield statute in the following language:

"Because the statute makes relevancy the touchstone of admissibility of the evidence, the same standard of review applies to decisions made under this statute as applies to appellate review of any other question involving the relevancy of evidence: decisions regarding the relevancy of evidence rest within the sound discretion of the trial court, and the trial court's decision should not be set aside absent a showing of abuse of discretion. See *State Highway Commission v. Lee*, 207 Kan. 284, 291, 485 P.2d 310 (1971), and *State v. Gonzales*, 217 Kan. 159, 161, 535 P.2d 988 (1975)." 2 Kan. App. 2d at 433.

In this case, the only basis for the defendant's offering evidence of the complaining witness's prior history of gonorrhea was to challenge her credibility. In our judgment, the trial court did not abuse its discretion in excluding the testimony. Mrs. T never testified that her statement to defendant that she had gonorrhea was true. It was to stop him from going further. The statement made to the officer that she did not have gonorrhea

was a true statement as shown by the laboratory test the day of the incident. Thus, the trial court did not abuse its discretion in excluding the evidence. The proffered evidence that Mrs. T at one time had had gonorrhea was irrelevant and could serve only to embarrass the victim. The defendant's first point is without merit.

The second point raised by the defendant on the appeal is that the trial court erred in permitting the State's expert witness, the physician who examined Mrs. T at Bethany Medical Center following the incident, to state before the jury her opinion that Mrs. T had been raped. At the trial, the State called to the witness stand Dr. Merrill Stass-Isern. Dr. Stass-Isern is employed at Bethany Medical Center as an emergency medicine physician. Her duties are basically to diagnose and treat any person who enters the emergency medicine facility. She was trained by five years of medical school and had had three years of residency. She is board certified in emergency medicine and had been employed at Bethany Hospital for three and one-half years. The record does not show that she had special training in psychiatry or that she was qualified to diagnose psychiatric problems. The doctor testified that, while she was employed at Bethany Medical Center, she had had the opportunity to examine persons complaining of rape. Bethany is a rape referral center, and she may see from one to three persons complaining of rape per month. Over the three and one-half year period of her employment, she had seen 30 to 50 individuals who complained that they had been raped. She testified that such individuals have certain common characteristics and emotional problems, falling into three categories:

(1) One type of person is hysterical and has a very hard time coping with anything immediately past the rape crisis.

(2) Another person is very upset and tearful but rational and is able to describe what has happened to her.

(3) The third person is very withdrawn and does not want to relate the circumstances and usually withdraws into herself.

Dr. Stass-Isern testified that, in the early morning hours of May 5, 1983, she examined Mrs. T at the hospital in the emergency department. She questioned Mrs. T, who complained of having been raped and related to her the circumstances. She gave Mrs. T a thorough examination. Her testimony was that

Mrs. T described the incident essentially in the same manner that Mrs. T testified at the trial. She described Mrs. T's emotional state as tearful but rational and able to describe the incident. The doctor testified that Mrs. T's emotional state was consistent with one of the three categories of rape victims mentioned above.

The physical examination performed on Mrs. T included an examination of her mouth and her pelvic and rectal regions. The doctor found no physical evidence that Mrs. T had been involved in sexual intercourse. She found no bruises. The following questions and answers then occurred:

"Q Doctor, based upon your medical education, treatment of prior rape victims, and your observations of [Mrs. T] and examinations of her, would you be able to render an opinion as to whether or not [Mrs. T] was raped or not?

"MR. PARKS: I object to that calling for a conclusion of the witness completely.

"MR. GORMAN: Judge, it most certainly is, and I believe I have laid sufficient foundation that she testified as an expert witness. The laws of evidence allow for expert witnesses to testify as to opinions.

"THE COURT: Objection is overruled.

"Q (By Mr. Gorman) Doctor, would you be able to draw an opinion?

"A Yes, I believe she was raped."

On cross-examination, Dr. Stass-Isern testified as to various tests performed on Mrs. T. She testified that she collected combed hair from various parts of Mrs. T's body, did a gonorrhea culture, did a pregnancy test, and did a number of other tests. She testified that the results were negative as to all tests. She found no evidence of trauma. The witness testified that her conclusion that Mrs. T had been raped was based on her prior knowledge of rapes, her medical experience, Mrs. T's story, and the findings that she put together with the tests and the history. The witness was then excused.

It is the position of the defendant that the trial court erred in admitting the expert's testimony because it was without sufficient foundation and invaded the province of the jury. The State argues that the opinion evidence was admissible under K.S.A. 60-456 which provides in part as follows:

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

"(c) Unless the judge excludes the testimony he or she shall be deemed to have made the finding requisite to its admission.

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

In *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423 (1978), it was held that, under K.S.A. 60-456, the opinion testimony of experts on the ultimate issue or issues is not admissible without limitation. Such testimony is admissible only insofar as the opinion will aid the jury in the interpretation of technical facts or when it will assist the jury in understanding the material in evidence. (Syl. ¶ 1.) The basis for the admission of expert testimony is necessity, arising out of the particular circumstances of the case. Where the normal experience and qualifications of laymen jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions are inadmissible. (Syl. ¶ 2.) To the same effect is *Smith v. Estate of Hall*, 215 Kan. 262, 524 P.2d 684 (1974), where it was held, "An expert's opinion in a proper case is admissible up to the point where an expression of opinion would require him to pass upon the credibility of witnesses or the weight of disputed evidence." (Syl. ¶ 3.) See also *State v. Reed*, 226 Kan. 519, 601 P.2d 1125 (1979).

On the basis of the record before us, we hold that the trial court committed prejudicial error in permitting Dr. Stass-Isern to testify that in her opinion Mrs. T had been raped. In the first place, the record shows a lack of proper foundation to qualify Dr. Stass-Isern as an expert to render such an opinion. There was no showing that she was trained as an expert in psychiatry. There was no showing that the bases for her conclusions were generally accepted in the field of psychiatry. Her conclusions were not based on a psychiatric examination and diagnosis. Although she had had some contacts in the past with women who came to the hospital claiming they had been raped, her conclusion was essentially based on the story related to her by Mrs. T and her physical examination of Mrs. T which was negative in result.

We further hold that a jury could properly assess the state of mind and actions of Mrs. T following the arrest of the defendant. As noted in *Lollis*, the basis for the admission of expert testimony is necessity. Here the normal experiences of laymen jurors would permit them to draw proper conclusions from the evidence presented by the State. In addition, Dr. Stass-Isern, in

arriving at her opinion that Mrs. T had been raped, of necessity had to pass upon the credibility of Mrs. T's story. The legal principles followed in *Lollis v. Superior Sales Co.* and *Smith v. Estate of Hall* are applicable and precluded the admission of Dr. Stass-Isern's opinion that Mrs. T had been raped.

We also wish to point out that our decision in *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982), has no application in this case. *Marks* held that, when consent is the defense in a prosecution for rape, qualified expert psychiatric testimony regarding the existence of "rape trauma syndrome" is relevant and admissible. Here consent was not the defense to the charge of rape. Mrs. T's testimony was that she had been raped at knife point. The defendant denied that any sexual intercourse took place at all. Furthermore, before a scientific opinion may be received in evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field. *State v. Washington*, 229 Kan. 47, 53, 622 P.2d 986 (1981). No such showing was made in this case. Also in *Marks* the testimony of the psychiatric expert, Dr. Modlin, was based on scientific evidence that he obtained from his psychiatric examination of the victim.

In the case now before us, the medical expert was not specially trained in psychiatry and did not examine Mrs. T for the purpose of rendering a psychiatric diagnosis as to whether or not Mrs. T evidenced "rape trauma syndrome." Our decision in *Marks* does not in any way authorize a medical expert to testify that in his opinion the complaining witness in a particular case was raped. The expert psychiatric testimony authorized by *Marks* is restricted to the victim's state of mind and the existence of the "rape trauma syndrome." The admission of the expert opinion of Dr. Stass-Isern that Mrs. T had been raped was clearly improper and prejudicial to the right of the defendant to a fair trial. There was a conflict between the testimony of Mrs. T and that of the defendant as to what happened in the woods after the car was parked. It was up to the jury to resolve that conflict. Their decision could have been affected by Dr. Stass-Isern's opinion.

The third point raised on the appeal is that there was insufficient evidence to support the verdict of guilty. The test to be applied to determine the sufficiency of evidence to support a verdict of guilty has been stated many times by this court: Does

the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt? *State v. Matlock*, 233 Kan. 1, 660 P.2d 945 (1983). In *Matlock,* it was held that a conviction of rape can be upheld on the uncorroborated testimony of the prosecutrix alone. It is only where the testimony of the prosecutrix is so incredible and improbable as to defy belief that the evidence will not be held sufficient to sustain a conviction. From the record in this case, we hold that there was sufficient evidence to sustain a verdict of guilty. The victim testified that she was threatened with a knife. She screamed for help upon the arrival of the police officer at the scene. She told the same basic story to several witnesses shortly after the incident occurred. The officer at the scene observed the defendant coming out of the woods with his zipper down and his belt dragging on the ground. We also note the testimony of the police officer that he found two open-bladed knives in the woods. We hold that this sufficiently corroborated the testimony of the complaining witness to support the verdict, although, as noted above, the trial court committed prejudicial error in admitting the expert opinion of Dr. Stass-Isern.

For the reasons set forth above, the judgment of the district court is reversed and the case is remanded to the district court with directions to grant the defendant a new trial.

SCHROEDER, C.J., concurs in the result.