NOT DESIGNATED FOR PUBLICATION

No. 116,799

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER L. WAISNER,
*Appellee*,

v.

STATE OF KANSAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed February 2, 2018. Affirmed.

*Michael F. Kagay*, district attorney, *Jodi Litfin*, deputy district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Christopher M. Joseph* and *Carrie E. Parker*, of Joseph, Hollander & Craft LLC, of Topeka, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MALONE, JJ.

MALONE, J.: The State of Kansas appeals the district court's order vacating Christopher L. Waisner's convictions of several off-grid sex offenses and other crimes and ordering a new trial. The district court issued this order after holding an evidentiary hearing on Waisner's motion filed under K.S.A. 2016 Supp. 60-1507, finding that he received ineffective assistance of trial counsel. We have jurisdiction to consider the State's appeal pursuant to K.S.A. 2016 Supp. 60-1507(d) and K.S.A. 2016 Supp. 22-3602(b)(4). For the reasons stated herein, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Waisner was convicted of various sex crimes in Shawnee County District Court. The underlying facts relating to the criminal case were summarized by this court in Waisner's direct appeal:

"This case involves allegations of sexual abuse lodged against Waisner by his daughter, T.G. Specifically, T.G. alleged that when she lived with Waisner during a period between May 2008 and January 2009 (while she was 11 and 12 years old), she unwillingly participated in various sexual acts initiated by Waisner, including: oral sex, digital penetration, slight penile penetration, penetration with a dildo, and various manners of lewd fondling or touching. T.G. eventually reported the allegations of abuse to her mother, and an investigation ensued.

"The investigation of T.G.'s allegations culminated in the State filing four charges against Waisner: rape of a child under 14 years of age; aggravated indecent liberties with a child; aggravated sodomy with a child under the age of 14 years; and, attempted rape of a child under the age of 14 years.

"The first trial on these charges resulted in a mistrial due to a hung jury. A second jury, however, found Waisner guilty as charged after deliberating for less than a day following an almost 5-day trial. Waisner testified in the first trial but did not testify in the second trial." *State v. Waisner*, No. 107,728, 2013 WL 3970177, at *1 (unpublished opinion) (Kan. App. 2013), *rev. denied* 299 Kan. 1274 (2014).

On April 10, 2015, Waisner, represented by new counsel, filed a motion for relief under K.S.A. 2016 Supp. 60-1507. In a memorandum in support of his motion, Waisner raised four claims of ineffective assistance of counsel. First, Waisner claimed that his trial attorney was ineffective for failing to challenge the State's use of prior consistent statements made by T.G. about the alleged sexual abuse. Second, Waisner claimed that his trial counsel was ineffective for failing to object to the testimony of two experts who testified beyond their qualifications and commented on T.G.'s credibility. Third, Waisner claimed that his trial counsel failed to adequately investigate issues relating to T.G.'s credibility. Finally, Waisner claimed that the prosecutor's closing arguments contained

2

several flagrant instances of misconduct to which trial counsel did not object and which appellate counsel failed to raise on appeal.

The district court held an evidentiary hearing on June 22-23, 2016. The judge who presided over the hearing was the same judge who had presided over Waisner's jury trial in the criminal case. Waisner's trial counsel, Kevin Cook, testified at the hearing. Cook testified that the theory of defense at both trials was to highlight that T.G.'s allegations had changed throughout the case and were becoming exaggerated; therefore, T.G. was not a credible witness. In addition, the defense challenged the investigation of the police officers as ineffective or incomplete based on the officers' failure to obtain T.G.'s phone records to confirm her testimony or to have T.G. undergo a physical exam.

Cook also testified about his understanding of the law on the subject of expert testimony in child sex abuse cases. In particular, Cook explained his understanding of this court's decision in *State v. Gaona*, 41 Kan. App. 2d 1064, 208 P.3d 208 (2009), *aff'd* 293 Kan. 930, 270 P.3d 1165 (2012), issued before Waisner's trial. Cook interpreted *Gaona* as permitting an expert witness to testify about the victim's behavior during the interview, interpret the child's behavior, and to testify about the ultimate question of whether the victim had been sexually abused.

After Cook testified, Waisner presented the testimony of Melanie Morgan, a licensed attorney who had been practicing criminal law since 1993 in federal and state courts in Kansas and Missouri. Morgan testified regarding all of Waisner's ineffective assistance of counsel claims. In particular, Morgan challenged Cook's failure to try to exclude or limit the testimony of Gwen Petersen, T.G.'s therapist, and Ann Goodall, who had conducted the Safetalk interview with T.G. Morgan opined that Goodall's testimony should have been very limited under *Gaona* and similar decisions, but Cook failed to object when Goodall's testimony exceeded what was permissible under Kansas law.

3

Morgan testified there was no reason or justifiable strategy to allow this inadmissible testimony into the trial, especially because the evidence was so damaging. Morgan also testified that both Petersen and Goodall testified in a manner essentially expressing their belief that T.G. was being truthful, and Cook did not properly object to this testimony. Morgan testified that Cook's failure to object to the inadmissible expert testimony substantially prejudiced Waisner and deprived him of a fair trial.

On October 19, 2016, the district court issued a memorandum decision and order addressing the four issues raised by Waisner. In addressing Waisner's first claim—that his trial attorney was ineffective for failing to object to the State's use of prior consistent statements from T.G.—the district court found the claim of ineffective assistance of counsel failed. The district court also rejected Waisner's third claim: that trial counsel failed to adequately investigate issues relating to T.G.'s credibility. In reviewing Waisner's final claim—that trial counsel erred in not objecting to improper statements made by the prosecutor and that appellate counsel was ineffective for failing to raise prosecutorial misconduct on appeal—the district court again found that Waisner failed to carry his burden of proof.

However, the district court found merit in Waisner's second claim: that his trial counsel was ineffective for failing to object to the testimony of two experts, Petersen and Goodall, who commented on T.G.'s credibility. The district court found that Cook not only had misread the Court of Appeals' decision in *Gaona*, but he had failed to consider prior opinions that supported the same principles: that a child abuse expert cannot expressly testify that a child was, in fact, abused, confirm the identity of the abuser, or otherwise vouch for the credibility of the alleged victim.

The district court found that Cook's failure to object to the inadmissible expert testimony of Goodall and Petersen was not objectively reasonable and constituted constitutionally deficient performance. Moreover, observing that the criminal jury trial

4

turned primarily on T.G.'s credibility, with no physical evidence to support the charges, the district court found that Cook's failure to object to the inadmissible expert testimony prejudiced Waisner and denied him a fair trial. Thus, the district court vacated Waisner's convictions and ordered a new trial. The State timely appealed from the district court's order. Waisner did not file a cross-appeal.

ANALYSIS

On appeal, the State claims the district court erred by vacating Waisner's convictions and granting a new trial based on ineffective assistance of trial counsel. Specifically, the State argues that the district court "erroneously concluded that [Cook's] representation was constitutionally deficient" under the first prong of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). The State also argues that the district court "erroneously concluded that Waisner established prejudice."

Waisner contends that the district court correctly found that Cook's representation fell below an objective standard of reasonableness when he permitted expert testimony that T.G. was "no doubt" sexually abused and that she was telling the truth about her allegations against her father. Waisner also argues that the district court correctly found that he was prejudiced by Cook's deficient performance.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, the appellate courts determine whether the district court's factual findings are supported by substantial competent evidence and whether those factual findings support the district court's legal conclusions; the appellate courts apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

5

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland*, 466 U.S. at 687).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015); see also *Strickland*, 466 U.S. at 694.

If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable only to the extent that a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (citing *Strickland*, 466 U.S. at 690-91).

*Standard for expert testimony regarding sexual abuse*

The State contends that Cook's failure to object to the experts' testimony was insufficient to establish deficient representation. It contends that the issue is not whether the testimony was admissible or inadmissible, but whether counsel's failure to object was objectively unreasonable under the totality of the circumstances. In challenging the

6

district court's ruling, the State argues that the district court erred in finding that this court's decision in *Gaona* was binding law because the decision was still under review at the time of Waisner's trial. We will begin by examining that decision.

In *Gaona*, the defendant was convicted of various sex crimes against his wife's daughter. During the trial, the State presented the testimony of an expert witness on the typical behavior of sexually abused children, over the defendant's objection. On appeal, the defendant challenged only the expert's qualifications to testify as an expert, not her testimony. This court cited prior caselaw discussing expert testimony in these types of cases but found those cases did not limit the qualifications of the witnesses to a person licensed or qualified to diagnose and treat mental disorders. 41 Kan. App. 2d at 1067-68. Significantly, however, this court noted:

> "[The expert] confined her testimony to the common behavioral traits *without relating them to the specific victim*, that she did not provide diagnostic testimony beyond her credentials, that she *did not state or imply that [the victim] had been sexually abused*, that she did not *opine on whether the victim was truthful or credible*, that *she did not suggest in any manner that [defendant] had any involvement*, and that the totality of her testimony appears to have been within the permissible scope of such testimony endorsed by our Supreme Court in [*State v.*] *McIntosh,* [274 Kan. 939, 58 P.3d 716 (2002)]." (Emphasis added.) 41 Kan. App. 2d at 1069.

Prior to Waisner's trial, the Kansas Supreme Court had granted a petition for review in the *Gaona* case but had yet to issue its opinion. Ultimately, the Kansas Supreme Court affirmed the Court of Appeals' decision in *Gaona*. 293 Kan. 930. The Supreme Court held that the witness in question was not qualified to testify as an expert on common characteristics of sexually abused children, but on the record in the case the erroneous admission of the testimony was harmless error. 293 Kan. at 949-50.

7

The State asserts that the district court erred in relying on the Court of Appeals' decision in *Gaona* because the decision in that case was not final at the time of Waisner's trial. However, the district court's memorandum decision finding ineffective assistance of counsel did not rely only on this court's decision in *Gaona*; the memorandum decision discussed in detail a variety of earlier Kansas published opinions that drew limits on expert testimony in sex abuse cases. We will now turn to some of the prior Kansas caselaw on this subject.

In *State v. Villanueva*, 274 Kan. 20, 49 P.3d 481 (2002), the defendant was convicted of the rape of his girlfriend. The district court permitted the State's expert witness to testify that based upon her training and experience, she was aware that there was a "common set of symptoms or behavior that is displayed by a victim of rape." 274 Kan. at 26. The witness also testified that based on the victim's counseling treatment records, she displayed some of the classic characteristics of a victim of rape. On appeal, the Kansas Supreme Court found that not only was the witness unqualified to diagnose rape trauma syndrome, her testimony that the victim's behavior was consistent with that of a rape trauma victim improperly bolstered the victim's credibility. 274 Kan. at 32-33. Noting that the evidence against the defendant was not overwhelming, the court found that the improper testimony prejudiced the defendant's right to a fair trial. 274 Kan. at 33.

In contrast, in *McIntosh*, the defendant was accused of sexually abusing his girlfriend's daughter over a several-year period. On appeal, the defendant challenged the admission of a licensed clinical social worker's testimony that the victim "exhibited behavior consistent with a child who had been sexually abused." 274 Kan. at 956. However, the witness did not state an opinion that the child, in fact, had been abused. The Supreme Court held that the testimony was not improper. 274 Kan. at 959. Specifically, the court stated:

8

"In cases involving sexual abuse, the evidence is often centered entirely upon the credibility of the victim and the alleged abuser. Theis' testimony provided circumstantial support in favor of A.D.'s credibility by demonstrating that her behavior was not inconsistent with someone who had been sexually abused. Theis did not testify that in his opinion A.D. was abused. McIntosh, through testimony elicited on cross-examination and later in his case in chief, made the jury aware that the presence of such behaviors in a child victim does not prove sexual abuse. Although jurisdictions differ as to the allowance of such testimony, McIntosh does not state a significant reason for this court to exclude such evidence in Kansas." *McIntosh*, 274 Kan. 959.

Waisner also relies heavily on the Supreme Court decision in *State v. Bressman*, 236 Kan. 296, 689 P.2d 901 (1984). In that case, the Supreme Court reversed a rape conviction after an emergency room physician testified about the common characteristics and emotional problems of rape victims. While the Supreme Court questioned the physician's qualifications to render such an opinion, the court found reversible error when the physician also testified that she believed the victim had been raped even though there was no evidence of physical trauma. 236 Kan. at 302-03.

As early as 1989, the Kansas Supreme Court cautioned prosecutors to use care on direct examination of child protection workers in sexual offense cases in light of the fine line between what evidence is permissible and what evidence is inadmissible. See *State v. Wade*, 244 Kan. 136, 142-45, 766 P.2d 811 (1989) (permitting case worker to describe the behavior of children who have told her they had been sexually abused and to testify that the victim's behavior was similar). That same year, the Supreme Court reviewed numerous cases from a number of states and held that a qualified expert with substantial experience in the field of child sexual abuse could testify as to (1) common patterns of behavior resulting from child sexual abuse, and (2) that a particular child has symptoms consistent with those patterns. *State v. Reser*, 244 Kan. 306, 315, 767 P.2d 1277 (1989).

Many other Kansas opinions predating Waisner's 2011 trial confirm the limits of such expert testimony in sex abuse cases by recognizing a line between testifying about common behaviors and traits of trauma victims as compared to testimony that the victim, in fact, was abused or was telling the truth, thus invading the province of the jury to determine what actually occurred. See, e.g., *State v. Jackson*, 239 Kan. 463, 470, 721 P.2d 232 (1986) (reversible error to allow expert witnesses to testify that the "child was telling the truth" about the allegations made against the defendant); *State v. Lash*, 237 Kan. 384, 386, 699 P.2d 49 (1985) (treating psychiatrist could not be permitted to testify whether victim was molested by his father).

To sum up, at the time of Waisner's trial, it was reasonably clear that qualified experts could only testify about (1) common patterns of behavior resulting from child sexual abuse, and (2) that a particular child has symptoms consistent with those patterns. However, Kansas caselaw also had established that is was impermissible for a witness to give opinion testimony that a victim, in fact, was sexually abused or was being truthful about allegations of sex abuse.

*Application of the law to the facts*

Turning to the evidence presented at Waisner's trial, Petersen, a licensed clinical specialist social worker, testified that she diagnosed T.G. with posttraumatic stress disorder (PTSD). Petersen discussed the frequency of delayed disclosure of child sexual abuse and how often a child discloses information in a piecemeal fashion. She testified about incomplete disclosure and avoidance in child sex abuse cases and her general treatment methods to encourage disclosure and address emotional responses. Toward the end of her testimony, the prosecutor specifically asked Petersen whether she had determined what traumatic event caused T.G.'s PTSD. Petersen responded: "It was the sexual abuse." Cook did not object to this testimony. Petersen then discussed her observations of whether T.G. was exaggerating or "malingering." Petersen defined

10

malingering as "making it up or faking it or false" allegations. Without objection, the prosecutor asked Petersen if she saw any signs of malingering in her sessions with T.G. and she responded, "No." Finally, the State asked Petersen, without objection: "Q. Do you have any doubt in your mind that [T.G.] is a victim of sexual abuse? A. No doubt."

Goodall, the State's final witness, was a social work specialist with the Department of Social and Rehabilitation Services (SRS). She testified she had a bachelor's level social worker license and had worked with SRS and similar agencies for about 14 years. Her current position with SRS was investigating allegations of child abuse and neglect. During Goodall's testimony, the State played a redacted video of her Safetalk interview with T.G., stopping and restarting the video while discussing T.G.'s actions and reactions during the video. During redirect examination, after confirming the number of sexually abused children Goodall had dealt with in her career, the prosecutor asked: "Do you have any doubt that [T.G.] was sexually abused?" Goodall said "No."

Rather than object to Goodall's statement, Cook reiterated and emphasized that testimony in recross-examination. In his brief recross, the following exchange occurred:

"Q. Whether or not you have any doubt as to whether or not sexual—[T.G] was sexually abused, that's your opinion, correct?

"A. It is my conclusion in my investigation for SRS based on all the information I received and evidence I got, yes.

"Q. That's your opinion; that's what you have come to the conclusion of, correct?

"A. I don't know if I can answer that that's my opinion, because my conclusion was also staffed within my agency, you know, with other social workers, you know, my supervisor, and that was the decision reached based on the information and evidence."

Both Petersen and Goodall repeatedly testified that T.G.'s behavior and words were consistent with a child who had been sexually abused. Based on established Kansas caselaw, this testimony was proper. See *McIntosh*, 274 Kan. at 959; *Reser*, 244 Kan. at

11

315; *Wade,* 244 Kan. at 142-45. However, the State crossed the line when the prosecutor specifically asked each of the experts whether they had "any doubt" that T.G. was, in fact, sexually abused. The State also crossed the line when the prosecutor asked Petersen to testify in a manner essentially expressing her belief that T.G. was being truthful. Kansas caselaw clearly had established that it was impermissible for a witness to given opinion testimony that a victim, in fact, was sexually abused or was being truthful about allegations of abuse. See *Jackson*, 239 Kan. at 470; *Lash*, 237 Kan. at 386; *Bressman*, 236 Kan. at 302-03.

Based on this long-established line of cases, Cook had clear grounds to seek a motion in limine or at least object to the questions of whether Petersen and Goodall believed T.G. was sexually abused or was telling the truth about the allegations. The district court ultimately concluded in its memorandum decision that "Mr. Cook's unfamiliarity with the law regarding the scope of expert testimony in cases such as this one prevented him from raising a proper objection to the State's impermissible expert testimony. . . . Accordingly, the first prong of *Strickland* is satisfied."

We agree with the district court's legal conclusion. "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. ___, 134 S. Ct. 1081, 1089, 188 L. Ed. 2d 1 (2014); see also *Cheatham*, 296 Kan. at 445 (misunderstanding the law is ineffective assistance and cannot be justified as trial strategy); *State v. Rice*, 261 Kan. 567, 607, 932 P.2d 981 (1997) (legal advice based on misunderstanding of the law objectively unreasonable). Thus, we conclude the district court did not err in finding that Cook's failure to object to the expert testimony was not objectively reasonable and constituted constitutionally deficient performance.

*Prejudice*

Finally, the State argues that even if Cook's failure to object to the expert witness testimony was constitutionally deficient, the district court erred in finding the error was prejudicial. Specifically, the State asserts that Waisner failed to show that it was "reasonably likely" that the result of his trial would have been different if counsel had performed adequately. To show prejudice, the complaining party "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a *probability sufficient to undermine confidence in the outcome*." (Emphasis added.) *Strickland*, 466 U.S. at 694.

As the district court observed in its memorandum decision, the criminal jury trial turned primarily on T.G.'s credibility, with no physical evidence to support the charges. Moreover, various witnesses testified at trial that T.G. never acted like she was having problems with Waisner. Several witnesses testified as to T.G.'s dislike for her stepmother, who was about to move back into the home, as well as to T.G.'s desire to live with her mother. Finally, the defense presented some evidence at trial inferring that T.G.'s mother may have colluded with T.G. to effect a change in custody.

The first jury was unable to reach a unanimous verdict as to Waisner's guilt. In addition, the judge who presided over the 60-1507 hearing was the same judge who presided over Waisner's jury trial. The judge had the ability to observe all the witnesses and to gauge the effect of evidence submitted by the experts. Based on the totality of the evidence and the importance of the experts' support of T.G.'s allegations, we agree with the district court that counsel's deficiency was sufficient to "undermine confidence in the outcome" of Waisner's trial. *Strickland*, 466 U.S. at 694. Accordingly, we conclude the district court did not err in vacating Waisner's convictions and ordering a new trial.

Affirmed.

13